**In re Carl Robert VALE, Lorraine Kathy Vale, Debtors.**

**Bankruptcy No. 90–60798.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary.

Sept. 24, 1996.

Trustee by Counsel Donald Dreyfus, Merrillville, IN, for Respondent.

Stephen Place, Merrillville, IN, for Debtors.

Gerald Parshall, Washington DC, for United States of America on Behalf of its Agency the Internal Revenue Service.

David Dubois, Trustee, Portage, IN.

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52 as made applicable by Bankruptcy Rules 9014 and 7052.

2. Federal Rule of Bankruptcy Procedure 9017 provides that the Federal Rules of Evidence apply in cases under the Code. *See also*, Fed. R.Evid. 1101(a) and (b). Federal Rule of Evidence 201 provides that the Court, whether or not requested, may take judicial notice of adjudicative facts at any stage of the proceedings. Federal Rule of Evidence 201 is the only evidentiary rule on the subject of judicial notice.

This Court has held in *In re Snider Farms, Inc.*, 83 B.R. 977, 986 (Bankr.N.D.Ind.1988), *citing*, *In re Woodmar Realty*, 294 F.2d 785, 788 (7th Cir.1961), *cert. den.* 369 U.S. 803, 82 S.Ct. 643, 7

### MEMORANDUM OPINION AND ORDER [1]

KENT LINDQUIST, Chief Judge.

#### I

### Statement of Proceedings

This Chapter 7 case came before the Court on May 29, 1996 for a final evidentiary hearing on the Motion with Supporting Brief filed on May 8, 1995 by the United States of America on behalf of its Agency, the Internal Revenue Service (hereinafter: "IRS"). The Motion of the IRS requests a determination by the Court of the federal income tax liability of the Debtors' estate to the IRS for the calendar year 1990 pursuant to § 505(b).

The Chapter 7 Trustee, David R. DuBois (hereinafter: "Trustee"), filed his Response to said Motion on March 8, 1996, with a Supporting Reply Brief. The Trustee's Affirmative Defense to the IRS' Motion is set out at pages 9–16 of his Reply Brief.

Trustee appears by Attorney Dreyfus.

IRS appears by Attorneys Parshall and Blunt.

Submitted. Evidence and arguments heard.

#### II

### Findings of Fact

The Court takes judicial notice of the record in the Debtors' main case, and finds as follows: [2]

1. That the Debtors filed their Joint Voluntary Chapter 7 Petition on May 4,

L.Ed.2d 550 (1962), that a bankruptcy court is duty bound to take judicial notice of its records and files. *See also*, *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991) (In nondischargeability proceedings the court can take judicial notice of matters of public record); *State of Florida Board of Trustees of Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir.1975) (not error for bankruptcy court to take judicial notice of related proceeding and records in cases before a court); *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957–58 (9th Cir.1989) (The Court may take judicial notice of the file and record in the underlying case); *Matter of Missionary Baptist Foundation of America*, 712 F.2d 206, 211 (5th Cir.1983) (A Court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom).

1990, and on May 10, 1990 the Trustee was appointed Trustee of the Debtors' estate.

2. That on July 27, 1990, the Trustee filed his Notice of Sale of certain real estate of the Debtors, which was property of the Debtors' bankruptcy estate pursuant to § 541(a), commonly known as 1818 Bluebird Lane, Munster, Ind. (hereinafter: "Real Estate").

3. That pursuant to said Notice the Trustee on August 24, 1990, filed his Application to Sell said Real Estate, attaching thereto as Exhibit "A", a Stipulation between the Trustee and the IRS resolving a certain Objection filed by the IRS on August 10, 1990, to the Trustee's Notice of Sale on the grounds that the IRS had a prior lien interest in said Real Estate by virtue of a federal tax lien.

Pursuant to that Stipulation, it was agreed between the Trustee and the IRS that the proposed sale of the Real Estate by the Trustee would be completed for $109,000.00, and that from the sale proceeds there would be deducted the following items: (1) Real Estate taxes; (2) sales commissions; (3) other normal sales expenses; and, (4) the balance due and owing on the first mortgage owed to First Bank. It was further stipulated that the balance of the sale proceeds would be paid over to the Trustee until the Court resolved the tax lien rights of the IRS.

4. That on November 20, 1990, the Trustee filed his Report of Sale with the Court reflecting that the Real Estate had been sold by the Trustee on August 24, 1990 for $109,000.00. After all customary and usual deductions, charges, and prorations, and the payment of the mortgage held on said Real Estate by First Bank of Whiting, the Trustee received the net figure of $48,339.00.

5. That on August 12, 1991, the IRS filed its Form 6338(c), Amended Proof of Claim, dated August 8, 1991, showing at Subpart A a secured claim in the sum of $14,929.98 due as a base tax for "100% pen.", plus a $9.00 penalty, and $14,044.52 in accrued interest as of the Petition date based on Notice of Tax Liens filed on June 14, 1985 and August 30, 1985. This claim arose out of "100%" tax penalties assessed versus the Debtors for the quarterly tax periods ending December 31, 1982 and September 30, 1983. The Debtors filed their Petition on May 4, 1990, and thus, these secured tax claims of the IRS clearly arose prepetition. (The "100%" tax penalties have reference to the responsible person tax liabilities of the Debtors pursuant to I.R.C. §§ 6672 and 7501.)

6. That on February 26, 1992, the Court entered an Order Approving a Stipulation filed by the Trustee, the IRS, and the Debtors on February 20, 1992, in which it was agreed that the Form 6338(c), Proof of Claim filed by the IRS dated August 8, 1991, should be allowed in full for the purposes of distribution to creditors of the Debtors' Chapter 7 case. It was further stipulated that the Debtor Carl and another individual were both severally liable for assessments made against each of them pursuant to I.R.C. § 6672 arising out of their involvement as principals of Elite Remodeling, Inc. It was further stipulated that within ten days of the entry of the Order approving the Stipulation the Trustee would pay the IRS from the sale proceeds $18,420.46, computed as of January 15, 1992, with additional interest to the date of full payment, and upon so doing, the secured claims as set out in subpart A of the IRS' proof of claims shall be deemed satisfied in full for the purpose of distribution to claims of creditors in the Debtors' Chapter 7 case.

7. That on July 23, 1993 Trustee DuBois filed his Application to Employ Harold P. Sullivan (hereinafter: "CPA Sullivan") to render professional accounting services relating to the administration of the Debtors' estate, and on July 27,

1993, the Court entered an Order approving that employment.

8. That on May 7, 1996, the Trustee filed his Report on this case, which included a Statement of Cash Receipts and Disbursement, and which reveals that on March 3, 1992, he paid the IRS the sum of $18,647.61 pursuant to the Order dated February 26, 1992. (*See* Subparagraph 6, *supra* ).

9. That to date no Court order has been entered allowing any § 503(b) administrative expenses to the Trustee for statutory commissions, to the Trustee's general counsel, Attorney DuBois, for fees and expenses, or to Attorney Dreyfus, who has been employed as special tax counsel for the Trustee. The record reveals that the Trustee, and Attorney DuBois, as attorney for the Trustee, filed their administrative expense applications on April 7, 1995, and Attorney Dreyfus filed his fee application on March 8, 1996.

The IRS and Trustee stipulated that all of the documents set out in the Trustee's Request for Admissions, and Stipulations filed on March 11, 1996, were deemed admitted into evidence as authentic and genuine without the necessity of extrinsic evidence or formal proof. *See* Prehearing Order, Par. 3, dated April 10, 1996.

A review of the Trustee's exhibits reveals the following:

1. Trustee's Exhibit No. 8: Letter dated March 2, 1992 by the local U.S. Attorney which advised the Trustee that the balance due on the tax lien of the IRS was $18,647.61 as of March 6, 1992.

2. Trustee's Exhibit No. 12: 1990 Form 1041. U.S. Fiduciary Income Tax Return filed by the Trustee on behalf of the Debtors' estate. This return is dated August 30, 1993, and is signed by CPA Sullivan. That return states a total estate income tax was due in the sum of $11,994.00 based on a capital gain of $55,232.00 on the sale of the Real Estate, which took place on August 24, 1990. *See* Schedule D, Capital Gains and Losses, Line 10, and Form 2119, Sale of Your Home, Line 8A. The sales price was shown as $109,000.00, with a basis of $38,000.00. (Form 2119, Lines 4 and 7). The Trustee claimed a standard deduction of $2,725.00 (1990 Form 1040, Line 34), and claimed an exemption of $2,050.00 (1990 Form 1040, Line 36). The return claimed a $3,000.00 reduction in Adjusted Gross Income based on $3,000.00 in accountants fees. This return has attached thereto a request that any additional assessment be abated, on the grounds that the Trustee did not receive the information necessary to complete the filing until August 17, 1993, and that there was no intentional attempt to avoid paying the required tax liability or from filing the required reports. This return does not indicate if it was filed on a cash basis or accrual basis.

3. Trustee's Exhibit No. 13: Letter dated September 9, 1993 by the Trustee to the IRS enclosing the 1990 Form 1041 Return (Trustee's Exh. No. 12), and requesting prompt determination of the estate's tax liability pursuant to 11 U.S.C. § 505(b). This letter also enclosed a check in the sum of $11,994.00 in payment of the estate income tax for the year 1990.

4. Trustee's Exhibit No. 21: Notice by the IRS to the Trustee dated November 15, 1993 as to the 1990, Form 1041 Fiduciary Return filed by the Trustee, for the estate tax period ending December 31, 1990. The Notice advised the Trustee that in addition to the base tax of $11,994.00 that was shown as paid on September 21, 1993, there was also due an additional $7,846.73 comprised of $4,497.75 in penalties and $3,348.98 in interest for the tax year 1990. The $4,497.75 in penalties was comprised of a penalty in the sum of $2,698.65 for filing late, and $1,799.10 for paying late.[3]

---

**3.** The Court takes judicial notice that as a consequence of the late filing and late payment penalties and interest penalty assessed by the IRS, pursuant to Notice dated November 15, 1993 (Trustees' Exh. No. 21), the Trustee filed his § 505(b) Motion versus the IRS on January 31,

5. Trustee's Group Exhibit No. 15: Letter dated May 25, 1994 by the Trustee to the IRS again requesting a prompt determination of the estate's income tax liability for the year 1990, pursuant to 11 U.S.C. § 505(b). This letter makes no reference whatsoever to the Trustee's letter dated September 9, 1993 to the IRS (Trustee's Exh. No. 13) in which he originally requested a § 505(b) prompt determination for the tax year 1990, or the Notice issued by the IRS in Response thereto dated November 15, 1993 assessing an additional $4,497.75 in penalties, and $3,348.98 in interest (Trustee's Exh. No. 21).

Also included as a part of Group Exhibit No. 15 was another Form 1041, U.S. Fiduciary Tax Return for the year 1990, and a Form 1040X, Amended U.S. Individual Income Tax Return for the year 1990 dated May 24, 1994, which was transmitted to the IRS with the May 25, 1994 letter by the Trustee. The Form 1040X adjusted the base income tax for the estate for the year 1990 from $11,994.00 to an allegedly correct amount of $6,662.00, and based on the previous payment made by the Trustee of $11,994.00 with the original Return (Trustee's Exh. No. 12), a tax refund was claimed by the Trustee in the sum of $5,332.00. (1990 Form 1041, Line 29, and Form 1040X, Line 23). As an explanation for the adjustment, the Trustee's Amended Return states that the "Trustee neglected to deduct interest paid on business liability, and did not include all administration fees. *See* Sch. A". Schedule A, Line 11, shows $11,105.00 in deductible interest, and Line 26 shows $12,000.00 in "Trustee Adm. Fees". The exact nature of the interest and administrative fees claimed as a deduction are not set out in Schedule A to Form 1040X. However, *see* Trustee's Exh. No. 19 discussed below.

As a result of these additional deductions on the Amended Return, the total net increase in deductions was shown as $20,380.00, and the corrected amount of deductions was shown as $23,105.00, rather than $2,725.00 as originally reported on the Form 1041 dated August 30, 1993 (Trustee's Exh. No. 12). *See* Line 4, columns A, B, and C of Amended Form 1040X. As a consequence, the Trustee showed a decrease in taxable income for the Debtors' estate for the year 1990 of $5,332.00, or from $11,994.00 as originally reported on the Form 1041 dated August 30, 1993 to $6,662.00. *See* Line 12, columns A, B, and C of Amended Form 1040X. The Amended Return does not state whether

---

1994 requesting that the Court enter an order that no additional tax, penalty, or interest is due the IRS. The only apparent grounds in the Motion is that if the Trustee were required to pay the additional interest and penalties assessed there will not be sufficient funds to pay all administrative expenses of the Debtors' estate. This, of course, is not a sufficient ground, standing alone, to abate the interest and penalties.

The IRS on February 25, 1994 filed its Objection to this Motion, and on April 21, 1994 filed its Motion for Summary Judgment asserting that all penalties and interest were properly assessed. On August 30, 1994, the Trustee filed a withdrawal of his § 505(b) Motion, to which the IRS on September 8, 1994 filed its Motion for Ruling/Opposition to Withdrawal. By Memorandum Opinion and Order of December 16, 1994, the Court determined that a hearing should be held on the Trustee's Motion to Withdraw his § 505(b) Motion. A hearing was held on January 26, 1995 and an Order was entered granting the Trustee's Motion.

As noted above on May 25, 1994, the Trustee filed a second request for a prompt determination pursuant to § 505(b) with the IRS, together with an Amended Form 1041 for the 1990 tax year (Trustee's Group Exh. No. 15). This was done while the Trustee's original § 505(b) Motion filed on January 31, 1994 was still pending. However, neither the Trustee, nor the Trustee's attorney, served a copy of the second request on IRS' counsel on, or notified the IRS' counsel, that he had filed a second request for a prompt determination with the IRS as to the 1990 tax year along with an Amended Return at the very time the IRS' counsel was contesting the Trustee's § 505(b) Motion filed on January 31, 1994. The Court seriously questions the validity of this second request and the ability of the Trustee to bind the IRS thereby while a first request and a § 505(b) Motion was still pending, as well as the propriety of the Trustee in so doing. Nevertheless, the original § 505(b) Motion was subsequently dismissed without prejudice on January 26, 1995, and thus, it had no legal effect whatsoever.

the Debtors' estate was on a cash basis or accrual basis.

6. Trustee's Exhibit No. 16: Letter dated July 1, 1994 from the IRS to the Trustee advising the Trustee that the Return (Trustee's Exh. No. 15) had been accepted as filed, pending verification of actual filing with the Service Center.

7. Trustee's Exhibit No. 19: Handwritten record by the Trustee of a phone message from CPA Sullivan to the Trustee dated July 28, 1995, that the $11,105.00 in interest liability as reflected on Schedule A to the Amended Return (*See* Trustee's Group Exh. No. 15 discussed *supra* ), was the "interest on payroll taxes which accrued through November 29, 1991", and that the administrative fees were "—$12,000.00—DuBois". The phone memo also indicated that CPA Sullivan would sign an affidavit that the Trustee's Returns were filed on an accrual basis.

The Trustee testified as follows:

1. That he has been a practicing attorney for thirty one years and has been a Bankruptcy Trustee since 1979, and estimated he may have administered around 300 cases per year.

2. That when he administers a bankruptcy estate by liquidating an estate's assets, and he believes that a taxable event has occurred, he normally employs an accountant for the bankruptcy estate. It is a common practice for him to file an estate income tax return for estates having taxable income.

3. That although he sold the Real Estate in 1990, he did not think that a taxable event had occurred in that year, as he was under the erroneous impression that because of the tax lien of the IRS, no estate income tax return was required, on the basis that the amount of the tax lien that was paid out of the sale proceeds could be deducted from the amount of any income tax that would otherwise be due.

4. That when he sold the Real Estate in 1990 he did not attempt to determine the basis therefore at that time, as he did not think it was relevant, based on the payment of the IRS tax lien.

5. That he eventually consulted CPA Sullivan in 1993, and he was then advised by him that his theory that the amount of the IRS tax lien that was paid by the estate out of the proceeds of the sale of the Real Estate could be a deduction against the income derived from the sale thereof was erroneous.

6. That he then checked with the Debtors' attorney who stated that the basis of the Real Estate was $38,000.00.

7. That when he learned of his mistake, he promptly had CPA Sullivan prepare the initial estate income tax return dated August 30, 1993 (Trustee's Exh. No. 12).

CPA Sullivan testified as follows:

1. That he has been a CPA since 1972, and has previously been employed in approximately 50 bankruptcy estates, involving approximately 100 estate income tax returns over the last 15 years—primarily by the Trustee.

2. That in July of 1993 he was first contacted by the Trustee regarding the possibility of rendering tax accounting services for the Debtors' bankruptcy estate.

3. That based on the closing statement for the sale of the Debtors' Real Estate, and a data sheet provided by the Trustee at that time, he advised the Trustee he could not initially determine if the Debtors' estate had any tax liability for the year 1990, as he did not know the Debtors' adjusted basis of the Real Estate.

4. That when the Trustee provided him with the adjusted cost basis of the Real Estate, he decided a fiduciary income tax return for the Debtors' estate should be filed for the year 1990 by the Trustee, and he prepared said Return dated August 30, 1993 (Trustee's Exh. No. 12).

5. That after the initial 1990 fiduciary income tax return was filed with the IRS, and the interest and penalties were assessed by the IRS, the Trustee advised him that an interest deduction had been missed as to the 1990 Return based on the IRS interest that had accrued on

the IRS' prepetition claim filed versus the Debtors' estate on August 12, 1991, i.e., the interest that had accrued on the IRS' secured claim versus the Real Estate, and that in addition, the estate also had an allowable deduction for $12,000.00 in administrative expenses for commissions and professional fees for the Trustee and his attorney that could be deducted.

6. That the interest deduction was computed by him as set out on the last page of Trustee's Group Exhibit No. 2, which totaled $11,105.00; and, that he then prepared an Amended Tax Return for the year 1990, dated May 24, 1994 reflecting this interest deduction, as well as a claimed deduction for administrative expenses of the estate for trustee commissions, and attorney's fees for Trustee's attorney in the sum of $12,000.00 (Trustee's Exh. No. 15).

7. That in addition, on May 15, 1996, he prepared a Form 1041, U.S. Fiduciary Income Tax Return for the year 1992 for the Debtors' estate, and on May 23, 1996, the Trustee mailed the same to the IRS requesting a prompt determination pursuant to § 505(b). (*See* Trustee's Exhibit No. 25, admitted into evidence pursuant to oral stipulation of the IRS in open court).[4]

8. That the 1992 Return was filed as a "protective return" in the event that this Court determined the Debtors' accounting method was on a cash basis, rather than on an accrued basis. The 1992 Return is accompanied by a Statement that "in the unlikely event that the Debtors' bankruptcy estate is found to have been a cash basis taxpayer, it is the Trustee's position that it is entitled to deduct interest of $11,105.00, which it paid in 1992 as part of the [Debtors'] Responsible Person Penalty". In that Statement the Trustee asserts that the deduction constitutes interest on a debt allocable to a trade or business and is based upon the recent Tax Court case of *Redlark [v. Commissioner of Internal Revenue]*, 106 Tax Court No. 2, [1996 WL 10243], and that additional support is found in the case of *Polk [v. Commissioner of Internal Revenue]*, 31 T.C. 412 [1958 WL 1213] (1958), *aff'd* 276 F.2d 601, 5 AFTR2d 1243. Finally, taxpayer relies upon the case of *Reise [v. Commissioner of Internal Revenue]*, 35 TC 571 [1961 WL 1350] (1961), *aff'd* 299 F.2d 380, 9 AFTR2d 887, 62–1 USTC Sec. 9295 (A–7, 1962), acq. in result only 1969–2 CB XXV.

The Trustee's 1992 Form 1040, Line 12, shows a business loss of $11,105.00 per the attached Schedule C, Profit or Loss From Business. Schedule C, Line 16b, interest other, which shows a deduction of $11,105.00.

The Trustee also by virtue of a 1992 Form 1045, Application For Tentative Refund, dated May 17, 1996 requested a refund for the tax year 1990, based on an Adjusted Gross Income of $42,365.00 for the year 1990 as opposed to the figure of $53,470.00 as shown in the original 1990 Return, (Form 1045, Lines 9(c) and (d)). As a consequence, the Trustee now asserts that the total tax liability for 1990 is $8,412.00, or $3,582.00 less than the $11,994.00 as previously reported in the 1990 Return (Form 1045, Lines 25, 26 and 27(c) and (d)).

9. That his computation of the $11,105.00 in additional interest on the 1992 Return which was carried back to the estate's tax year for 1990, was interest paid by the Trustee to the IRS on the IRS' prepetition tax claims versus the Debtor in 1992, and then carried back as a deduction versus the Trustee's 1990 tax return.

10. That based on his review of the Debtors' 1988, 1989, and 1990 Form 1040 Income Tax Returns (Trustee's Exhs. No. 9, 10, and 11) he determined initially

---

**4.** This § 505(b) request as to the 1992 Return was filed just prior to the hearing held on the 1990 Return, as amended, of the Debtors' estate. The IRS orally stipulated in open court, that it waived its right to 60 day reply period for the tax year 1992 given to it by § 505(b)(1)(A), and thus, the tax liability of the Debtors' estate for the tax year 1992 was also submitted at the hearing for determination by the Court.

that the Debtors were on an accrual basis method of accounting, and thus the Debtors' estate succeeded to this method of accounting pursuant to I.R.C. § 1398(g)(7). That he came to this conclusion even though the Debtors' occupations were shown on the Form 1040 as executive and secretary on the 1988 and 1989 Returns, and as Sales/Bldg. and Secretary on the 1990 Returns, and the great majority of their income was shown to be in the form of wages and salaries, which would clearly be paid on a cash basis.

11. That in the usual chapter 7 case, 99.5% of the individual debtors are on a cash basis; however, based on the reference to Line 22 (other income) in the 1988 Return, Line 12 (Business income based on Schedule C) in the 1989 Return, and Line 12 (Business income based on Schedule C) in the 1990 Return, he concluded that the Debtors could be construed to be on an accrual basis method of accounting, even though he never had access to the Schedule C referred to in the Returns, or any other supporting documentation based on the Debtors' books and records.

## III

### *Conclusions of Law and Discussion*

#### *A.*

#### *Jurisdiction*

No objection was made by counsel to the subject-matter jurisdiction of this Court as to this matter. The Court finds subject-matter jurisdiction to be present, pursuant to 28 U.S.C. § 1334(b), and that this contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

#### *B.*

#### *Scope and Application of Section 505(b)*

Section 505(b) of Title 11 states as follows:

(b) A trustee may request a determination of any unpaid liability of the estate for *any tax incurred during the administration of the case* by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, *the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—*

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or ·

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;

(2) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

(3) upon payment of the tax determined by such governmental unit to be due.

11 U.S.C. § 505(b) (Emphasis supplied).

It must be carefully noted that § 505(b) applies only to "any unpaid liability of the *estate* for any tax *incurred during the administration of the case*". Thus, § 505(b) only applies to postpetition administrative taxes of the estate. The legislative history to § 505(b) in the form of the House Report, clearly indicates that the purpose of this section "[i]s to protect the trustee from *personal* liability for a tax falling on the estate that is not assessed until after the case is closed.... The final order of the Court and the payment of the tax determined, in that order, discharges the *trustee*, the debtor, and any successor to the debtor from any further liability for the tax." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977) U.S.Code Cong. & Admin.News 1978 pp. 5787, 5963, 6312 (Emphasis supplied).

■ As observed above, § 505(b) states that if that provision is complied with by the Trustee, "The trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax". It has been held

that the Chapter 7 Trustee's proper filing of an expedited audit request bars the IRS from collecting any penalty or interest for that tax year, even though the tax return was untimely filed, where the IRS did not send a statutory examination notice to the Trustee as required by § 505(b). *In re Carie Corp.*, 128 B.R. 266, 268–69 (D.Ala.1989). However, the application of the plain language of § 505(b) indicates that it does not in any way purport to discharge the bankruptcy *estate* from any tax liability, as opposed to the trustee or the debtor personally. It has been consistently held that if the IRS does not respond to a prompt determination request pursuant to § 505(b), the trustee, the debtor, and the debtor's successors, if any, are discharged from liability for the tax, but the *estate itself* is not discharged from the tax. *In re West Texas Marketing Corp.*, 155 B.R. 399, 404–05 (Bankr.N.D.Texas 1993) *aff'd.* 54 F.3d 1194, 1198–1200 (5th Cir.1995); *Matter of Fondiller*, 125 B.R. 805, 807–08 (N.D.Cal.1991); *In re Rode*, 119 B.R. 697, 699–700 (Bankr.E.D.Mo.1990). *Compare, In re Flaherty*, 169 B.R. 267, 270, n. 4 (Bankr. D.N.H.1994). *See also*, 31 U.S.C. § 3713(b) (This statute does not except Trustees from filing income tax returns; it only assures them that they will not be personally liable to the USA when paying certain creditors prior to the IRS as required by the Bankruptcy Code).

In addition, § 505(a)(2)(B) provides as follows:

(2) The court may not so determine—

\* \* \* \* \* \*

(B) any right of the estate to a tax refund before earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

Thus, to the extent that the Trustee's Amended Return for the year 1990, and his Request for Prompt Determination by letter dated May 25, 1994 (Trustee's Exh. No. 15), requested a refund for the estate tax year 1990, § 505(a)(2)(B) is applicable to the refund claim, and not § 505(b). *See In re*

*Southwestern States Marketing Corp.*, 179 B.R. 813, 815–16 (N.D.Tex.1994). *See also*, IRS Rev.Proc. 81–18 which sets out the revenue procedure to be followed as to a trustee (or debtor-in-possession) in filing a claim for a credit or refund of any overpayment of tax pursuant to § 505(a)(2)(B) (This revenue procedure also provides that it is not applicable to an application for a tentative carry back or refund adjustment per § 6411 of the I.R.C.).

■ The Trustee, in his Affirmative Defense set out in Reply Brief filed on March 8, 1996, asserts that based on the Trustee's second request for a prompt determination based on § 505(b) by his letter of May 25, 1994, enclosing the Amended Tax Return for the year 1990 (Trustee's Group Exhibit No. 15), and the favorable Response thereto by the IRS dated July 1, 1994, (Trustee's Exhibit No. 16), the Trustee has met the requirements of § 505(b), and the estate is only obligated to the IRS for administrative tax liabilities based on the Trustee's Amended Return in the sum of $6,662.00. The Court concludes that this Affirmative Defense is misplaced, based upon the *West Texas Marketing Corp.*, *Fondiller*, *Rode* and *Southwestern* cases discussed above. Accordingly, the Response by the IRS of July 1, 1994 to the Trustee's Amended Return that said Amended Return had been accepted by it as filed does not preclude the IRS from seeking a determination of the administrative tax liability of the Debtors' estate to it, as opposed to the Trustee personally pursuant to § 505(b). However, this Court is not deciding as to any remaining portion of its unsecured § 507(a)(8) priority tax claim filed by the IRS on August 12, 1991 in the sum of $13,-633.43, plus interest (*See* Subpart B), that it has no further independent remedies versus the Trustee personally that are *not* based on § 505(b), to the extent that it is still a prepetition creditor of the Debtors' estate. *See In re El San Juan Hotel Corp.*, 847 F.2d 931, 936–38 & n. 5 (1st Cir.1988).

### C.

### Presumptive Correctness of an IRS Assessment and the Burden of Persuasion on the Taxpayer

■ As this Court stated in *In re Walters*, 176 B.R. 835 (Bankr.N.D.Ind.1991):

The assessment of the Internal Revenue Service is presumptively correct. *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir.1981); *Compton v. United States*, 334 F.2d 212, 216 (4th Cir.1964).

The Seventh Circuit Court of Appeals in *Ruth v. United States*, 823 F.2d 1091 (7th Cir.1987) stated: "We agree with the many courts that have held that once the government presents an assessment of liabilities, the taxpayer bears the burdens of production and persuasion." *Id.,* 823 F.2d at 1093, n. 2 (collecting cases). In general, the Courts will not look behind an assessment to evaluate the procedure and evidence in making the assessment, rather the court conducts *de novo* review of the correctness of the assessment, imposing the risk of non-persuasion on the taxpayer. *Id.,* 823 F.2d at 1094.

In certain quite limited circumstances, however, the Courts recognize that an assessment should not be accorded even a rebuttable presumption of correctness. For example, when the assessment is shown to be without rational foundation, or arbitrary and erroneous, the presumption should not be recognized. *Id.,* 823 F.2d at 1094. *See also, United States v. Schroeder,* 900 F.2d 1144, 1147–48 (7th Cir.1990); *Pfluger v. C.I.R.,* 840 F.2d 1379, 1382 (7th Cir.1988); *Zuhone v. C.I.R.,* 883 F.2d 1317, 1325–26 (7th Cir.1989).

*Id.,* 176 B.R. at 868–69. *See also, In re Associated Bicycle Service, Inc.,* 128 B.R. 436, 444 (Bankr.N.D.Ind.1989) (After the introduction by the government of its assessment which is presumptively correct, the burden shifts to the taxpayer to rebut the presumption, and if the taxpayer rebuts the presumption, it disappears in which case the burden of proving the deficiency reverts to the government). Thus, the Trustee has the burden of showing that the assessment by the IRS was not correct, without rational foundation, arbitrary, or erroneous.

## D.

### Interest Assessed by the IRS on an Unpaid Post-petition Administrative Tax Claim versus the Debtors' Estate

■ Although § 503(b)(1)(B) does not expressly refer to interest on an administrative tax claim, the case law is well established that postpetition interest must be paid on the base amount of an administrative tax claim as a first priority administrative tax expense out of the bankruptcy estate pursuant to § 503(b)(1)(B). *See Williams v. United States,* 667 F.2d 1108, 1111 (4th Cir.1981); *United States v. Friendship College, Inc.,* 737 F.2d 430, 433 (4th Cir.1984); *In re Preferred Door Co., Inc.,* 990 F.2d 547, 549–50 (10th Cir.1993); *In re Flo–Lizer, Inc.,* 916 F.2d 363, 366–67 (6th Cir.1990); *In re Allied Mechanical Services, Inc.,* 885 F.2d 837, 838–39 (11th Cir.1989); *In re Mark Anthony Construction, Inc.,* 886 F.2d 1101, 1108 (9th Cir. 1989); *In re FOB of Merrillville, Inc.,* Case No. 89–61003, slip op. at pp. 2–10 (Bankr. N.D.Ind. October 9, 1992) (J. Lindquist) (Collecting cases).

■ The payment of interest on the underpayment of a tax is required, and the Internal Revenue Code provides no exceptions. *In re Injection Molding Corp.,* 95 B.R. 313, 315 (Bankr.M.D.Pa.1989). 26 U.S.C. § 6601(a). *See also, United States v. Means,* 621 F.2d 236, 238 (6th Cir.1980) (There is no good faith exception to a taxpayer's efforts to determine his tax liability which tolls interest penalty during the time liability is contested. There is no legal basis to disallow an interest penalty during a liability contest). Thus, the Court finds that the $3,348.98 is postpetition administrative tax interest assessed versus the Debtors by the IRS pursuant to its Notice dated November 15, 1993 (Trustee's Exhibit No. 21) based on the Trustee's original Form 1041 Return for the year 1990 (Trustee's Exh. No. 12) was proper, and shall be allowed as a first priority administrative expense versus the Debtors' estate, along with the base amount of the administrative tax due by the Debtor's estate.

## E.

### Late Filing and Late Payment Penalties assessed by the IRS on the Unpaid Postpetition Administrative Tax Claim versus the Debtors' Estate

■ Section 503(b)(1)(C) expressly states that any penalty relating to a tax of a kind

specified in § 503(b)(1)(B) is a first priority administrative expense. Thus, there is no question that this is a clear and express statutory authority for the assessment of late filing and late payment penalties by the IRS versus the Debtors' estate relating to postpetition administrative taxes, and that any such penalty itself is to be accorded administrative expense status. *See In re Preferred Door Co., Inc.,* 990 F.2d at 549, *supra; In re Flo–Lizer, Inc.,* 916 F.2d at 366, *supra; United States v. Friendship College, Inc.,* 737 F.2d at 432–33, *supra; In re FOB of Merrillville, Inc.,* Case No. 89–61003, slip op. at pp. 11–13 (Bankr.N.D.Ind. October 9, 1992) (J. Lindquist) (Collecting cases).

These postpetition tax penalties assessed versus the Debtors' estate share equally with all other § 503(b) administrative claims that may be filed versus the Debtors' estate, and that are allowed by the Court, such as trustee's commissions and attorney fees for the trustee's attorney. As stated by the Court in *In re Lazar,* 83 F.3d 306 (9th Cir.1996):

> Under the Bankruptcy Code, administrative expense creditors must be treated equally and the court should not set up its own order of priorities. *See In re Cochise College Park, Inc.,* 703 F.2d 1339, 1356 n. 22 (9th Cir.1983); *In re Barron,* 73 B.R. 812, 813–14 (Bankr.S.D.Cal.1987); *In re Nana Daly's Pub., Ltd.,* 67 B.R. 782, 787 (Bankr.E.D.N.Y.1986); *see also,* 3 Collier on Bankruptcy ¶ 507.02[2], at 507–12 (15th ed.1992). Although a bankruptcy court has the authority to subordinate a claim on equitable grounds, *see, Pepper v. Litton,* 308 U.S. 295, 304–05, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939); *Matter of Fabricators, Inc.,* 926 F.2d 1458, 1464 (5th Cir. 1991); *In re Westgate–California Corp.,* 642 F.2d 1174, 1177 (9th Cir.1981), equitable subordination is an unusual remedy which should be applied only in limited circumstances. *Matter of Fabricators, Inc.,* 926 F.2d at 1464; *In re Octagon Roofing,* 157 B.R. 852, 857 (N.D.Ill.1993).

*Id.,* 83 F.3d at 308–09.

It is also well established that the Bankruptcy Court lacks the inherent power to reclassify a bankruptcy estate's liability for interest and penalties on postpetition taxes from priority debts to general unsecured debts. *In re Preferred Door Co., Inc.,* 990 F.2d 547, 550–51 (10th Cir.1993) (Distinguishing, *United States v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990)). It is also noted that the United States Supreme Court in the case of *United States v. Noland, Trustee for Debtor First Truck Lines, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1524, 1528, 134 L.Ed.2d 748 (1996), has held that the Court cannot apply § 510(c) relating to equitable subordination to postpetition noncompensatory tax penalties and "set up a subclassification of claims . . ., and fix an order of sub-classes according to its theory of equity". (*Quoting, In re Columbia Co.,* 117 F.2d 999, 1002 (3rd Cir.1941)). The Supreme Court in *United States v. Noland* also held that Congress could have, but did not, deny noncompensatory, postpetition tax penalties the first priority given to other administrative expenses, and bankruptcy courts may not take it upon themselves to make that determination under the guise of equitable subordination. *Id.,* at ——, 116 S.Ct. at 1528. In so holding, the Supreme Court reversed the decision of the Sixth Circuit in *In re First Truck Lines, Inc.,* 48 F.3d 210, 212 (6th Cir.1995), which held that postpetition, nonpecuniary loss tax penalties were susceptible to subordination by their very nature. *See also, United States v. Reorganized CF & I Fabricators of Utah, Inc.,* —— U.S. ——, ——, 116 S.Ct. 2106, 2114–15, 135 L.Ed.2d 506 (1996), where the Supreme Court cited the *Noland* case, and reiterated that the categorical reordering of priorities among creditors that takes place at the legislative level of consideration is beyond the scope of judicial authority to order equitable subordination under § 510(c).

Section 6651(a)(1) of the Internal Revenue Code provides for a penalty for failure to file any return required, while § 6651(a)(2) provides for a penalty for failure to pay the amount shown as tax on any return specified in § 6651(a)(1) on or before the date prescribed for the payment of such tax. However, both of these subsections provide that the assessment of a penalty may be excused if "[it] is shown that such failure is due to

reasonable cause and not due to willful neglect". Section 6651 is implemented by IRS Regulations. *See* 26 C.F.R. §§ 301.6654–1 *et seq.*; 26 C.F.R. § 301.6651–1, *et seq.* Pursuant to § 6658(a)(1), no additions to the tax shall be made under § 6651 for failure to make timely payment of tax with respect to a period during which a case is pending under Title 11 of the United States Code, if such tax was incurred by the estate and the failure to pay the tax occurred pursuant to an order of the Court finding a probable insufficiency of funds of the estate to pay administrative expenses. No such order was entered in this case, and thus § 6658(a)(1) is not applicable. *See In re DuPage Boiler Works, Inc.,* 98 B.R. 907, 909 (Bankr.N.D.Ill. 1989).

The Supreme Court in the case of *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) held that to escape a tax penalty under § 6651, the taxpayer bears the "heavy burden" of proving both (1) that the failure did not result from "willful neglect" and, (2) that the failure was "due to reasonable cause." *Id.,* at 245, 105 S.Ct. at 689–90. The Supreme Court stated that "willful neglect" may be read as meaning a conscious, intentional failure, or a reckless indifference. *Id.,* at 245–47, 105 S.Ct. at 690 (Collecting cases). The Supreme Court also observed that as to the "reasonable cause" requirement, the relevant Treasury Regulations, 26 C.F.R. § 301.6651–1(c)(1), call on the taxpayer to demonstrate that he exercised "ordinary business care and prudence", but nevertheless was "unable to file the return within the prescribed time." *Id.* (Collecting cases).

The Court in *United States v. Boyle* decided it should draw a "bright line" on the issue and stated:

When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. *See Haywood Lumber [& Mining Co. v. Commissioner, supra,* 178 F.2d 769, 771 (2nd Cir.1950)] "Ordinary business care and prudence" do not demand such actions.

By contrast, one does not have to be a tax expert to know the tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. Among the first duties of the representative of a decedent's estate is to identify and assemble the assets of the decedent and to ascertain tax obligations. Although it is common practice for an executor to engage a professional to prepare and file an estate tax return, a person experienced in business matters can perform that task personally. It is not unknown for an executor to prepare tax returns, take inventories, and carry out other significant steps in the probate of an estate. It is even not uncommon for an executor to conduct probate proceedings without counsel.

It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under § 6651(a)(1).

*Id.,* at 251–52, 105 S.Ct. at 692–93; *See United States v. Kroll,* 547 F.2d 393, 396–97 (7th Cir.1977) (When there is no question that a return must be filed, the taxpayer has a personal, nondelegable duty to file the tax return when due; the failure of his attorney or accountant to present him with a return for his signature before date must put him on notice that reliance on attorney or accountant is not exercise of ordinary care or prudence); *Alton OB–Gyn, Ltd. v. United States,* 789 F.2d 515 (7th Cir.1986) (Duty to file required tax form may not be delegated to third party; reliance on agent to file is not reasonable cause for failure to file); Annot: *Reliance on*

*Attorney, Accountant, or other Expert as "Reasonable Cause" Excusing Failure to File Tax Return or to Pay Tax Under § 6651 of the Internal Revenue Code of 1954 (26 USC § 6652).* 61 A.L.R.Fed. 319 (1983).

The taxable income of an individual's bankruptcy estate shall be computed in the same manner as for an individual. I.R.C. § 1398(c)(1). Every estate of an individual under Chapter 7 or 11 of Title 11 of the United States Code, the gross income of which for the taxable year is not less than the exemption amount, plus the basic standard deduction under § 63(c)(2)(D) [sic] has the duty to file a Form 1041 Fiduciary Income Tax Return on behalf of the bankruptcy estate. I.R.C. § 6012(a)(9). Returns of any estate of an individual under Chapter 7 or 11 of Title 11 of the United States Code shall be made by the fiduciary thereof. I.R.C. § 6012(b)(4). In addition, the Trustee has the duty to see that any tax computed as taxable income of the estate is paid. I.R.C. § 1398(c)(1).

 A determination of whether the § 6651 penalties assessed by the IRS versus the Debtor's estate for the 1990 estate tax year was proper is not a factual issue to be determined by whether or not the Trustee relied on CPA Sullivan's tax advice that he need not file a return for that year, as the evidence is clear that the Trustee did not consult CPA Sullivan at all regarding the requirement of whether a Fiduciary Income Tax Return should be filed by the Debtors' estate for the tax year 1990 until 1993. The Trustee did not attempt to change the estate's annual accounting period. § 1398(j)(1). The Debtors' tax year was the calendar year. Thus, the Debtors' estate was also the calendar year. Any Fiduciary Income Tax Return for the Debtors' estate for the year 1990, was due by the Trustee on or before April 15, 1991. Thus, the relevant time frame for making the determination as to whether the Trustee has shown reasonable cause or lack of willful neglect in order that the Debtor's estate may avoid the assessment of a postpetition penalty under §§ 6651(a)(1), or (a)(2), must be made as of no later than April 15, 1991, rather than when the Trustee first consulted CPA Sullivan in 1993. *See Indus-*

*trial Indemnity v. Snyder,* 41 B.R. 882, 883–84 (E.D.Wash.1984) (Reasonable cause for failure to pay a tax must exist on the date the tax is due, not thereafter, in order to avoid assessment of a penalty. The "reasonable cause" standard is a one-time test to be passed or failed at the tax due date (*citing,* 26 C.F.R. § 301.6651–1).

In this case the Court concludes that the Trustee has not met the "heavy burden" of showing *both* that the failure to file did not result from "willful neglect", *and* that the failure was "due to reasonable cause", as is imposed upon him by standards set out by the Supreme Court in *United States v. Boyle,* at 243–45, 105 S.Ct. at 689. The Court cannot find based on the evidence that the Trustee was guilty of "willful neglect" in that there was a conscious, intentional failure to file, or a reckless indifference as to filing. *Id.,* at 246 + N. 4, 105 S.Ct. at 690 + N. 4. However, the Trustee has not met his burden of showing "reasonable cause" for not filing the Return. As the Supreme Court observed in *United States v. Boyle,* the term "reasonable cause" is not defined in the Code, but the relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised "ordinary business care and prudence within the prescribed time." *Id.,* (*Citing,* 26 C.F.R. § 301.6651–1(c)). In this regard, the Trustee has not shown that he has exercised ordinary care and prudence in not timely filing a 1990 income tax return for the Debtors' estate, and therefore the tax penalties should be imposed on the estate.

This is not a case in which the Trustee relied on the erroneous advise of an accountant, or his court approved attorney, concerning a question of law as to the estate's 1990 Return prior to April 15, 1991, the date the 1990 Return was due. The Trustee was not only a very experienced trustee, but he was also employed as counsel for the Trustee, and had previously represented himself as attorney for the Chapter 7 Trustee in literally hundreds of cases where estate assets were liquidated and an income tax return by the estate was required. In addition, this case presented a "garden-variety" scenario that should have alerted the Trustee that an

estate tax return was in all probability required for the tax year 1990, given the $109,-000.00 sales price of the estate property. A Chapter 7 Trustee has a general obligation to file tax returns on behalf of a bankruptcy estate that reaches the threshold amount of gross income to trigger the filing of a return.) *In re Pflug*, 146 B.R. 687, 689 (Bankr. E.D.Va.1992). *Holywell Corp. v. Smith*, 503 U.S. 47, 55, 112 S.Ct. 1021, 1026, 117 L.Ed.2d 196 (1992) ("Section 6012(b)(4), as the debtors assert, applies to the fiduciary of a trust as well as the fiduciary of a bankruptcy estate.").

■ The threshold amount of gross income, wherein an estate income tax return must be filed, varies from year to year, depending on the standard deduction and allowed exemption, as adjusted, but once the gross income for the taxable year exceeds the basic standard deduction, and the exemption amount, that duty becomes fairly evident. Section 6012(a)(9) of the I.R.C. states that the Trustee must file a return for the estate if the estate realizes "gross income of which for the taxable year is not less then the sum of the exemption amount, plus the standard deduction under Section 63(c)(2)(D) [sic]." Section 1398(c)(3) provides that in the case of an estate that does not itemize deductions, the basic standard deduction for the taxpayer shall be the same as a married individual filing a separate return. Section 6012(a)(1)(d)(ii) provides that the term "exemption amount" has the meaning given such term in § 151(d)(2). The Internal Revenue Code at § 61(a)(3) defines "Gross Income" as including "Gains from dealing in property; ...". Section 1001(a) provides that the gain from the sale or other disposition of property shall be the excess of the amount received therefrom over the adjusted basis provided in § 1011 for determining gain. The sale of the Real Estate by the Trustee for $109,-000.00 clearly was a transaction that was a gain from dealing in property of the Debtors' estate pursuant to § 541(a), and constituted gross income to the Debtors' estate. *See In re Bentley*, 916 F.2d 431, 432 (8th Cir.1990) (Chapter 7 estate's liability for tax on gain from the sale of corn crop and interest earned on sale proceeds not abrogated by abandonment of property by the Chapter 7

trustee); *In re Duby*, 98 B.R. 126, 127 (Bankr.D.R.I.1989) ("Capital gains taxes are obligations of the estate and constitute administrative expenses, which has first priority status under § 507(a)(1)").

In 1990 the Debtor's estate had a standard deduction of $2,500.00, based on a married individual filing a separate return, (§ 63(c)(2)), and an exemption of $2,000.00 (§ 151(d)(1)) subject to any inflation adjustment pursuant to § 63(c)(4) and § 151(d)(4). Thus, the Trustee had a duty to file an estate return for 1990 when the estate's gross income exceeded the sum of the allowed standard deduction and exemption as adjusted, or $4,775.00. The fact that the Trustee believed no income tax was due does not relieve the Trustee from his obligation to file a tax return if the threshold amount of gross income is reached. *See In re Wills*, 46 B.R. 333, 334–35 (Bankr.D.Md.1985), where the trustee sold real property of the bankruptcy estate for $195,000.00, and his proposed distribution showed that there were insufficient funds to pay administrative expenses, lien claimants, debtor's exemptions and the IRS in full. In *Wills*, the trustee filed a motion to determine the necessity of filing an estate tax return, asserting that no income tax return was required. The Court denied said motion based on §§ 6012(a)(9), and 1398(c)(3), and held that while there may not be any tax liability, those determinations should be made pursuant to § 505(b), and a tax return should have been filed.

No special training or effort was required to ascertain that an estate tax return was in all probability required for the year 1990, in light of the sale price. Congress has placed the duty for prompt filing on the Trustee, not on his accountant or attorney, and that duty is fixed and clear. *See* IRS Publication No. 908 (Rev.Sept.1994), Tax Information on Bankruptcy, p. 4. ("The trustee (or debtor-in-possession) must file an income tax return on Form 1041, U.S. Fiduciary Income Tax Return if the estate has gross income that meets or exceeds the amount required for filing. This amount is the total of the personal exemption amount and the standard deduction for a married individual filing separately.") Extensions are granted fairly rou-

tinely, yet none was sought. The Trustee did not rely on any erroneous advice prior to April 15, 1991 as to whether a return for 1990 had to be filed by the estate, even though he had court appointed-counsel. Tax expertise, or the lack thereof, is not the real issue. Of course, the Trustee will quickly respond that the issue is that the Trustee in good faith believed that no return whatsoever was required, as he misconstrued the tax laws, and that he was thus not guilty of "willful neglect". The Court would observe that good faith or "willful neglect" is not the issue. The issue is whether the Trustee exercised a modicum of "ordinary business care and prudence", but nevertheless, was unable to file the return within the prescribed time. If the Trustee would have exercised ordinary business care and prudence he would have realized that in all likelihood a return was required for the year 1990. Accordingly, the Court concludes that the penalties assessed by the IRS were correct.

### F.

### Whether the Debtors' Estate on a Cash Basis Method or Accrual Basis Method of Tax Accounting

■ Although not made explicit, or implicit, by the pleadings and prehearing statements, an issue that arose at the hearing as to the estate's tax year 1990, concerning whether the Debtors' estate could take a deduction for the interest paid by the Trustee to the IRS in 1992 on the IRS's tax lien and for § 503(b) administrative expenses (assuming said items are deductible). Considerable evidence was submitted as to whether the prepetition Debtors were on a cash accounting basis or an accrual accounting basis method of accounting on the premise that this could impact on the income tax liability of the Debtors' estate relating to the deductions of $11,105.00 for the interest paid to the IRS on its prepetition tax lien, and the $12,000.00 in administrative expenses that the Trustee claims were incurred by the Debtors' estate. See § 1398(g)(7), which provides that the Debtor's Bankruptcy Estate shall succeed to the method of accounting used by the Debtors. The general rules for the methods

of accounting by a taxpayer for income tax purposes are set out in 26 U.S.C. § 446. Section 446 is implemented by an IRS Regulation. See 26 C.F.R. § 1.446–1. In addition, pursuant to § 1398(j)(1), notwithstanding § 442, the Debtors' estate may change its. annual accounting period one time without the approval of the Secretary. The evidence submitted on this issue of what method of tax accounting was employed by the Debtors by both the IRS and the Trustee was inadequate, as the Debtors' prepetition income tax returns for the years 1988, 1989, and 1990 were not complete, and, in addition, none of the Debtors' underlying books and records that would have formed the basis for the preparation of those returns were offered into evidence. Thus, the Court is compelled to decide the Debtors' method of accounting, and in turn the method of accounting for the Debtors' estate, under less than favorable circumstances. Did the Debtors' business have inventories? Did the Debtors' business report business income on a cash, accrual, or hybrid method of accounting? A taxpayer may use one accounting method of computing business income and deductions, and a different method of computing personal income and deductions. 26 C.F.R. § 1.446–1(c)(1)(iv)(b).

The Debtors' 1988 return revealed $30,913.00, in wages and salaries, and $1,808.00 in "other income". (See Trustee's Exhibit No. 9, 1988 Form 1040, Line 22). In 1989, the Debtors' return revealed $22,852.00 in wages and salaries, and $6,681.00 in business income. (See Trustee's Exh. No. 10, Line 12). However, Schedule C referred to in Line 12 is not attached. In 1990, the Debtors' return revealed $35,183.00 in wages and salaries and $3,000.00 in business income. (See Trustee's Exh. No. 11, Line 12). Again the Schedule C referred to in Line 12 is not attached. The IRS vigorously took the position at the hearing that based on the best evidence available the Debtors were on a cash basis method of accounting, and accordingly, the Debtors' estate succeeded to the cash basis method pursuant to § 1398(g)(7), rather than the accrual method of accounting as asserted by the Trustee.

It is provided at Section 446 of the I.R.C. as follows:

(a) **General rule.** Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) **Exceptions.** If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the *computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.*

(c) **Permissible methods.** *Subject to the provisions of subsections (a) and (b),* a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

(d) **Taxpayer engaged in more than one business.** A taxpayer engaged in more than one trade or business may, in computing taxable income, use a different method of accounting for each trade or business.

26 U.S.C. § 446(a)—(d). (emphasis supplied). The IRS Regulations also permit the taxpayer to choose his or her method of tax accounting. However, the Regulations also have the following exception:

(b) Exceptions. (1) If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, *the computation of taxable income shall be made in a manner which, in the opinion of the Commissioner, does clearly reflect income.*

26 C.F.R. § 1.446(1)(b)(1) (emphasis supplied). In addition, 26 C.F.R. § 1.446–1 states in part as follows:

(c) *No method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income.* The method used by the taxpayer in determining when income is to be accounted for will generally be acceptable if it accords with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the Income Tax Regulations. For example, a taxpayer engaged in a manufacturing business may account for sales of the taxpayer's product when the goods are shipped, when the product is delivered or accepted, or when title to the goods passes to the customers, whether or not billed, depending on the method regularly employed in keeping the taxpayer's books.

26 C.F.R. § 1.446–1(c)(1)(ii)(C). (Emphasis supplied).

The United States Supreme Court in the case of *United States v. Catto,* 384 U.S. 102, 86 S.Ct. 1311, 16 L.Ed.2d 398 (1966), upheld the Commissioner's determination that the accrual method should be used for tax purposes instead of a hybrid—cash accrual—method for a largely inventory-based business. The Supreme Court referred to I.R.C. § 446 and stated:

Congress has granted the Commissioner broad discretion in sheparding the accounting methods used by taxpayer, ...

\*　　\*　　\*　　\*　　\*　　\*

It is clearly within the discretion of the Commissioner to reject such a hybrid method of accounting.

*Id.,* 384 U.S. at 114, 117, 86 S.Ct. at 1317, 1319. In the subsequent case of *Thor Power Tool Co. v. Commissioner,* 563 F.2d 861 (7th Cir.1977), *aff'd.,* 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979), the Supreme Court upheld the Commissioner's use of § 446 to change the taxpayer's accounting method. The *Thor* court held that the Code and the Regulations give the Commissioner broad discretion to set aside the taxpayer's method if, "in [his] opinion it does not reflect income clearly". *Id.,* 439 U.S. at 540, 99 S.Ct. at 785.

The next question is the standard of review to be applied by this Court as to this Commissioner's determination as to the proper tax accounting method that should be used by the taxpayer. It has been held that the Commissioner's selection of an accounting method may be challenged only upon a

clear showing that he abused his discretion. *Wilkinson–Beane, Inc. v. Commissioner,* 420 F.2d 352, 353 (1st Cir.1970) (*Citing, Standard Paving v. Commissioner,* 190 F.2d 330, 332 (10th Cir.), *cert. den.,* 342 U.S. 860, 72 S.Ct. 87, 96 L.Ed. 647 (1951)); *American Fletcher Corp. v. United States,* 832 F.2d 436, 438 (7th Cir.1987); *Asphalt Products Co. v. Commissioner,* 796 F.2d 843, 847–48 (6th Cir.1986), *rev'd, per curiam,* on different grounds, 482 U.S. 117, 107 S.Ct. 2275, 96 L.Ed.2d 97 (1987); *Record Wide Distrib., Inc. v. Commissioner,* 682 F.2d 204, 206 (8th Cir.1982), *cert. den.,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983)); *RCA Corp. v. United States,* 664 F.2d 881, 886 (2nd Cir. 1981), *cert. den,* 457 U.S. 1133, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982)). Thus, this Court's task is not to decide in the first instance whether in its own opinion the Trustee's accrual method of tax accounting clearly reflects income of the Debtors' estate based on the Debtors' prepetition income tax returns, but to decide whether there is an adequate basis in law for the Commissioner's determination that the method of accounting employed by the Debtors' estate did not clearly reflect income, and that the cash basis method should be employed. *See RCA Corp. v. United States,* 664 F.2d at 886, *supra.* Whether a given method of accounting clearly reflects income is a question of fact. *Thor,* 563 F.2d at 866, *aff'd.* 439 U.S. 522, 99 S.Ct. 773, *supra.*

Based on the best evidence available, the court cannot conclude that the IRS has abused its discretion in determining that the income of the Debtors' estate is best reflected by the cash basis method of tax accounting, rather than the accrual method as asserted by the Trustee. The only scintilla of evidence that might support the Trustee's position are the references in the Debtors' 1988, 1989, and 1990 income tax returns, that they had other taxable business income in a modest amount. However, a great percentage of their income was from wages and salaries. The Court cannot speculate that because the Debtors' business income *may* have involved inventory, they probably were on an accrual method of accounting. *See* 26 C.F.R. § 1.446–1(c)(2)(i). There is no direct evidence in the record that the Debtors used

a hybrid method of accounting, where the Debtors can use two methods of tax accounting. *See,* 26 C.F.R. § 1.446–1(c)(1)(iv)(b). In fact, the Trustee's own witness, CPA Sullivan, testified that 99.5% of individual debtors who file Chapter 7 are on a cash basis. Accordingly, the Court concludes that the IRS did not abuse its discretion in determining that the Debtors, and, in turn the Debtors' estate should report its income on the cash basis method of accounting, rather than on an accrual basis. Thus all determinations of the income tax liability of the Debtors' estate shall be made on the cash basis method of tax accounting as asserted by the IRS. *See e.g., In re BKW Systems, Inc.,* 1989 WL 201206, 1989 Bankr. LEXIS 2054, 90–1 USTC, Par. 50, 139 (Bankr.D.N.H.1989).

### *G.*

***The Deductibility by the Debtors' Estate for the Tax Year 1990 of (1) The Interest Paid by the Trustee to IRS in 1992 on its Prepetition Secured Claim versus the Debtors' Estate, and (2) The Deductibility by the Debtors' Estate of the—Commissions, and Attorney's Fees and Expenses of the Trustee's Attorneys that have accrued versus the Debtors' Estate as a § 503(b) Administrative Expense pursuant to 26 U.S.C. § 1398(h)(1).***

The issue that was to be tried according to the IRS' Supporting brief, was whether the Trustee was entitled to have statutory late filing penalties, statutory late payment penalties, or statutory interest abated, involving the Trustee's failure to file an estate return for the year 1990, and pay federal income taxes on the gain recognized by the Debtors' estate as a result of the sale of the Real Estate by the Trustee. The Court has already determined that the administrative tax, interest and penalties assessed versus the Debtors' estate should not be abated. The question remains whether the Debtors' estate may deduct on its Amended 1990 Return, the interest paid to the IRS in 1992 on its prepetition, secured tax claim, and the § 503(b) administrative expenses allegedly incurred by the Trustee for professional fees and commissions.

The Court will first address the interest deduction in the sum of $11,105.00 claimed by the Trustee on his Amended Tax Return for year 1990 dated May 24, 1990. (Trustee's Exh. No. 21). First, it is observed that the Trustee actually paid the IRS $18,647.61 in satisfaction of its prepetition tax lien on March 3, 1992, pursuant to an order entered by this Court on February 26, 1992 approving a Stipulation filed by the Trustee and the IRS on February 20, 1992.

Section 506(a) of Title 11 provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest is a "secured claim" to the extent of the value of such creditor's interest in the estate's interest in the property, and is an "unsecured claim" to the extent that the value of such creditor's interest is less than the amount of such claim. *See* § 101(5) for the definition of a "Claim"; § 101(37) for the definition of a "lien"; and § 101(53) for the definition of a "statutory lien". In addition, § 506(b) provides that to the extent that an allowed secured claim is secured by property of a value which, after any recovery under subsection (c) of § 506, is greater than the amount of such claim, there shall be allowed to the holder of such claim, among other things, interest. *See Rake v. Wade,* 508 U.S. 464, 471–73, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993) (§ 506(b) provides for the allowance of postpetition interest on all oversecured claims, even if the claim includes prepetition interest). *See also, United States v. Ron Pair Enterprises,* 489 U.S. 235, 240–43, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989) (Postpetition interest is payable on the government's oversecured tax claim pursuant to § 506(b)). On the other hand, a claim can be afforded § 503(b) priority as an administrative expense only if the debt arises from a postpetition transaction with the Debtor–in–Possession [or trustee]. *Matter of Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984). That is, only those debts that arose *after* the filing of the bankruptcy petition may be accorded administrative expense status. *In re United Trucking Service, Inc.,* 851 F.2d 159, 161 (6th Cir.1988).

Here, the IRS' secured claim filed versus the Debtors' estate on August 12,

1991, was clearly based upon a prepetition tax debt. The IRS' claim was secured pursuant to a prepetition Notice of Tax Lien to the extent of $14,929.98 in base tax, plus $9.00 in penalty, and $14,044.52 in accrued interest as of the Petition date. The Real Estate sold for $109,000.00. After paying the First Mortgage, all reasonable and necessary expenses of sale, and closing costs, the Trustee netted $48,439.89, before the payment of the IRS' tax lien. Thus, the IRS was oversecured on its prepetition tax lien as defined by § 506(a), and was entitled to postpetition interest thereon pursuant to § 506(b). Although the Trustee, postpetition, paid the IRS the agreed amount of its tax lien on March 3, 1992, pursuant to the Court's Order of February 26, 1992 approving the settlement between the Trustee and the IRS filed on February 20, 1992, that secured debt was clearly based on the IRS' prepetition claim. The postpetition payment by the Trustee to the IRS of the interest on that prepetition tax lien of the IRS did not constitute the payment of interest on a postpetition administrative tax under § 503(b).

Section 1398(h)(1) of the I.R.C., expressly provides that any administrative expense allowed under § 503(b) of the Bankruptcy Code, to the extent not disallowed by any other provisions of the I.R.C., shall be allowed as a deduction by the Debtors' estate. By its own express language, § 1398(h)(1) of the I.R.C. permitting the deduction of any administrative expenses allowed under § 503(b) does not apply to the payment by the Debtor's estate of any *pre* petition claim filed by a creditor of the debtor's estate that is a governmental taxing authority or agency, such as the IRS's Form 8363(c) secured tax claim filed on August 12, 1991 covering the Debtors' prepetition tax periods ending December 31, 1982 and September 30, 1983. Any such secured tax claim by the IRS, based on a prepetition debt clearly does not fall within the scope of § 1398(h)(1), which only relates to § 503(b)(1)(B) and (C) postpetition administrative taxes incurred by the estate that have first priority under § 507(a)(1). The allowance of the IRS' prepetition claim is controlled by § 502 and not by § 503. Accord-

ingly, any attempt by the Trustee to deduct the payment of the $11,105.00 in interest to the IRS in 1992 as a postpetition administrative tax expense on his Amended 1990 fiduciary return from the income generated by the postpetition sale of the Real Estate in 1990 is erroneous and cannot be allowed. In addition, since the Debtors' estate previously has been determined by this court to be on a cash basis method of tax accounting, that portion of the $18,647.61, which was attributed to interest on the IRS' tax lien versus the Debtors, or $11,105.00, clearly cannot be deducted on the Trustee's Amended 1990 Return, as this interest was not actually paid by the Trustee to the IRS until 1992, though the sale of the Real Estate was held in 1990. It is well established that a taxpayer on a cash basis may deduct interest that is otherwise deductible only if it is actually paid during the tax year. *See* I.R.C. § 461(a); 26 C.F.R. § 1.446–1(c)(1)(i) (Under the cash receipts and disbursements method of accounting, expenditures are to be deducted for the taxable year in which actually made); *See also,* Am.Jur.2d, *Federal Taxation,* Par. 18621.

■ The Court will next address the Trustee's asserted deduction for § 503(b) administrative expenses in the sum of $12,000.00, as set out in his Amended Return filed on May 24, 1994 for the estate's tax year 1990. (Trustee's Group Exh. No. 15). Section 1398(h)(1) of the I.R.C. clearly provides that any administrative expense "allowed" under § 503 of Title 11 shall be allowed as a deduction against administrative (postpetition) income. The Court takes judicial notice of the record in the main case, that no § 503(b) administrative expenses have been allowed by the Court to date. Section 503(b)(2) provides that "After notice and hearing, there shall be allowed administrative expenses, ... including—(2) compensation and reimbursement awarded under Section 330(a) of this Title." Section 330(a)(1) provides that, after notice, the Court may "award to a trustee, examiner, a professional person employed under Section 327 or 1104–(A) reasonable compensation ...; and, (B) reimbursement for actual, necessary expenses". In addition, Fed.R.Bk.P. 2002(a)(7) requires a notice to all creditors on

any hearing on all applications for compensation or reimbursement of expenses totaling in excess of $500.00.

The Amended Return for the year 1990 does not itemize to whom these $12,000.00 in administrative expenses were payable to, nor does it state that they had been allowed by Court order as required by § 503(b). Because no order has ever been entered by this Court awarding any such administrative expenses and the payment thereof, no actual payment has been made by the Trustee to administrative claimants for the same to date. These deductions must therefore be denied at this time for the estate's tax year 1990, as the Court has previously determined that the Debtors were on a cash basis method of tax accounting, and thus the Debtors' estate is also on a cash basis. Accordingly, any such § 503(b) administrative expenses are only deductible by the Debtors' estate pursuant to I.R.C. § 1398(h)(1) after they are first allowed by the Court, and then only for the tax year in which they are actually paid to the administrative claimants by the Trustee pursuant to court order.

### H.

### *The Deduction Taken by the Trustee in his "Protective" Estate Income Tax Return for the Year 1992, as to the Interest Paid to the IRS in 1992 on its Prepetition Tax Lien*

The Court has previously concluded that the Debtors' estate was on a cash basis method of tax accounting, and since the interest on the IRS' prepetition tax lien was actually paid by the Trustee in 1992, the Debtors' estate cannot deduct this interest on the estate's Amended 1990 income tax return. The Court has also concluded that since this interest was paid on the IRS' prepetition tax claim, it was not a postpetition administrative expense that could be deducted pursuant to I.R.C. § 1398(h)(1). However, the Trustee on May 15, 1996 filed his Form 1041 Fiduciary Return for the tax year 1992, and has made a § 505(b) request for a prompt determination for the tax year 1992. (*See* Trustee's Exh. 25). The Trustee characterizes the 1992 Return as a "Protective Return." Pur-

suant to the Statement by the Trustee annexed to this Return, the Trustee states that among the issues involved in the Trustee's § 505(b) motion is the method of accounting of the Debtor's estate, and that the Trustee took the position as to the estate's 1990 Amended Return that it was entitled to accrue, and did accrue, deductible investment interest in the sum of $11,105.00, and administrative expenses in the sum of $12,000.00. The Trustee further asserted that in the unlikely event that the Debtors' estate is found to be a cash basis taxpayer, it is the Trustee's position that he is entitled to deduct on his 1992 return, the interest of $11,-105.00 which the Debtors' estate paid in 1992 to the IRS on its prepetition tax lien, based on the prepetition responsible person penalty assessed versus the Debtors, in that this interest constitutes interest on a debt allowable to a trade or business, *citing Redlark,* 106 Tax Ct. No. 2.

Thus, the final issue to be addressed is whether the interest paid by the Debtors' estate to the IRS in 1992 on the § 6672 responsible person penalties assessed by versus the Debtors by the IRS prepetition, is deductible by the Debtors' estate on its 1992 return, as this interest was paid to the IRS by the trustee in 1992, and the Debtors' estate is on a cash basis method of tax accounting. Section 1398(e)(3) provides as follows:

> Except as otherwise provided in this section [1398], the determination of whether or not any amount *paid* or incurred *by the estate*—
>
> > (A) *is allowable as a deduction* or credit under this chapter, or
> >
> > (B) is wages for purposes of subtitle C, *shall be made as if the amount were paid or incurred by the debtor* and as if the debtor were still engaged in the trades and businesses, and in the activities, the debtor was engaged in before the commencement of the case.

26 U.S.C. § 1398(e)(3) (emphasis supplied). In *In re Fingers,* 170 B.R. 419 (S.D.Cal. 1994), the Court in discussing § 1398(e)(3) of the I.R.C. stated as follows:

The Committee Reports to P.L. 96–589 which enacted tax rules relating to bankruptcy cases for individuals notes only that the aforesaid rule under section 1398(e)(3) was "... intended to insure that no particular item of deduction or credit can be allowed to both the debtor and the estate." S.Rep. No. 1035, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 7017. Section 1398(e)(3) therefore implies that either the debtor or the estate may take an item of deduction as long as it is not allowed as a deduction to both parties. *Id.,* 170 B.R. at 431. Thus, even though the payment by the Trustee of the interest on the IRS' prepetition tax lien in 1992 does not qualify as a deductible administrative expense under § 1398(h)(1), for either the tax years 1990 or 1992, and cannot be deducted as prepetition interest as to the 1990 tax year as the Debtors' estate was on a cash basis, the question remains whether that interest payment to the IRS in 1992 in the sum of $11,105.00 is deductible under § 1398(e)(3) by the Debtors' estate for the tax year 1992, against interest income in the sum of $1,281.00 received in 1992, if that interest had been deductible by the Debtors before the commencement of the case.

The Court takes judicial notice that the Real Estate sold by the Trustee as an asset of the Debtor's estate pursuant to § 541(a), was the Debtors' personal residence. (*See* Debtors' Schedules B and B-4). Pursuant to § 1398(f)(1) of the I.R.C., the transfer (other than by sale or exchange) of an asset from the debtor to the estate has no tax consequences, i.e., the transfer is not a taxable event. However, § 1398(f)(1) provides that the estate shall be treated as the debtor would be treated with respect to such asset. *See In the Matter of Kochell,* 804 F.2d 84, 87 (7th Cir.1986) (Bankruptcy Trustee's premature withdrawal of funds from Debtor's IRA account for benefit of creditors made the estate liable for the ten percent penalty tax). Thus, the issue is whether under § 1398(e)(3), the Debtors could have deducted the $11,105.00 in interest paid by the Trustee to the IRS in 1992 on the IRS' prepetition tax lien versus the Real estate based on § 6672, "100% responsible person" penalties assessed versus the Debtors as to

the estate's 1992 income tax return, and carry back this loss versus the gain realized from the sale of the Debtors' personal residence by the Trustee on August 24, 1990 as to the estate's 1990 income tax return. (*See* Trustee's 1992 Form 1045, Application for Tentative Refund. Trustee's Exh. No. 25). This interest payment is not a § 503(b) administrative expense that is deductible by the estate under § 1398(h)(1) of the I.R.C. In addition, if the Debtors could not have deducted this interest payment, the Debtors' estate also cannot deduct that interest pursuant to § 1398(e)(3). *Compare, Williams v. United States,* 667 F.2d 1108, 1111 (4th Cir. 1981) (Congress never intended that individual bankruptcy estates could deduct distributions made to creditors from gross income). (*Williams* was a Bankruptcy Act case decided on tax years before the enactment of the Bankruptcy Tax Act of 1980, and § 1398(e)(3) which is applicable in this case). The estate is on a cash basis method of tax accounting, and thus if this interest payment is deductible, it is deductible in 1992, when the interest payment was made by the Trustee to the IRS. The Deductibility of the interest paid by the Debtors' estate in 1992 involves the consideration of several sections of the I.R.C. which are discussed below.

1. *The Deductibility by the Debtors' Estate pursuant to 26 U.S.C. § 162 for the year 1992 of the § 6672(a) Responsible Person Penalty Assessed Prepetition by the I.R.S. versus the Debtors.*

Pursuant to 26 U.S.C. § 6672(a), any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. Amounts assessed under I.R.C. § 6672(a) are frequently referred to as the "100%", or "responsible person penalty".

Under I.R.C. § 162(a), in general, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. However, the I.R.C. expressly provides that no deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law. *See* I.R.C. § 162(f). A penalty assessed under I.R.C. § 6672 versus a responsible corporate officer for failure to pay over taxes withheld from employee's wages is not deductible from the corporate officer's income when he files his applicable 1040 tax return. *Patton v. Commissioner,* 71 T.C. 389, 1978 WL 3200 (1978). The taxpayer in *Patton* was a former employee of a defunct business which had failed to remit to the Internal Revenue Service (hereinafter referred to as I.R.S.) the payroll taxes withheld from the employees wages. The taxpayer was assessed the responsible person penalty under I.R.C. § 6672 for the failure of the corporation to pay the required payroll taxes to the IRS when due. When the taxpayer made partial payment of the penalty, he also deducted the payment on his individual tax return as an employee business expense. The court held that while I.R.C. § 162(a) allows deductions for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, I.R.C. § 162(f) provides that no deduction shall be allowed under I.R.C. § 162(a) for any fine or similar penalty paid to a government for the violation of any law.

To allow a deduction by an individual for the payment of his defunct corporations's liabilities for unpaid payroll taxes would be to frustrate a well-defined public policy. *Conley v. Commissioner,* 36 T.C.M. (CCH) 1644, 1977 WL 3591 (1977). The debtor in *Conley* was the Chief Executive Officer (CEO) and primary shareholder of a public relations corporation. The corporation failed to pay over to the IRS various payroll taxes it incurred prior to the corporation's financial failure. As CEO and shareholder, the debtor paid his corporation's payroll taxes and then deducted them on his personal tax return as business bad debts (uncollectible ordinary and necessary business expenses) even after the debtor took employment as an executive with a competing corporation. The court held that even if payment by the debtor of the corpo-

ration's liabilities for unpaid F.I.C.A. and Federal withholding taxes were otherwise deductible by him, the deduction would have to be disallowed on the ground that to allow the same would be to frustrate a well defined public policy. *Id. See also Smith v. Commissioner*, 34 T.C. 1100, 1960 WL 1281 (1960), aff'd. per curiam 294 F.2d 957 (1961); *Hudlow v. Commissioner*, T.C.Memo 1971–218, 1971 WL 2293 (1971).

The Court in *Meersman v. Commissioner*, 65 T.C.M. (CCH) 1878, 1993 WL 27500 (1993) also held that the responsible person penalty imposed under I.R.C. § 6672 cannot be deducted as business expenses since it is a nondeductible "fine or penalty" under I.R.C. § 162(f). The debtor in *Meersman* had guaranteed some business loans made by his corporation in which he was shareholder and President in 1980 to 1982. In late 1982 because the corporation was in financial difficulty, the debtor relinquished his stock and Presidency in the corporation to additional investors. In 1983 the corporation filed a petition in bankruptcy. By 1988, the debtor had been assessed, as a responsible person, the penalty under I.R.C. § 6672 (sometimes referred to as the 100–percent penalty) for payroll taxes of the corporation. The court held that even though I.R.C. § 162(a) allows deductions for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, I.R.C. § 162(f) provides that no deduction shall be allowed under I.R.C. § 162(a) for any fine or similar penalty paid to a government for the violation of any law. *Id.*

Thus, any payment made to the IRS on its prepetition tax lien, based on the Debtor's § 6672 Responsible Person Penalty, would not be deductible by the Debtors. Accordingly, since the payment of the penalty itself could not be deducted by the Debtors, the Debtors' estate cannot claim a deduction for the payment of that penalty pursuant to § 1398(e)(3). Thus, assuming *arguendo* that any portion of the payment made by the Trustee to the IRS constituted a payment of the prepetition responsible officer penalty assessed versus the Debtors, any such payment is not deductible by the Debtors' estate. However, it appears, that the deduction claimed by the Trustee on behalf of the Debtors' estate is for the *interest* that was paid by the Debtors' estate to the IRS on the Debtors' § 6672(a) Responsible Person Penalty, rather than on the underlying penalty itself. This issue will be addressed below.

2. *Whether the payment by the Trustee of the interest on the prepetition § 6672 Responsible Person Penalty claim by the IRS versus the Debtors' Estate may be deducted by the Debtors' Estate in computing the tax liability of the Debtors' Estate for the tax year 1992.*

Prior to the Tax Reform Act of 1986, generally an unlimited amount of personal and business interest paid by a taxpayer was deductible from an individual's personal income tax regardless of the personal or business purpose of the underlying obligation. With the passage of the Tax Reform Act of 1986, and subsequent amendments, "personal interest" paid by a taxpayer must be generally classified as a non-deductible transaction. Under I.R.C. § 163(a) a deduction is allowed for all interest paid or accrued within the taxable year on indebtedness. However, under I.R.C. § 163(h), no deduction is allowed for "personal interest" paid or accrued during the taxable year.[5] Section 163(h)(2) of the I.R.C. further defines "personal interest" in the negative, as any interest allowable, among other things, as a deduction *other* than: (A) interest allocable to a trade or business (other than performing services as an employee); and, (D) any qualified residence interest (within the meaning of paragraph 3).[6] Section 163(h)(3) of the I.R.C.

---

5. I.R.C. § 163(h) provides as follows:
 Disallowance of deduction for personal interest. (1) In general. In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.

6. I.R.C. § 163(h)(2) provides as follows:

Personal interest. For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than—
(A) Interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),

defines "qualified residence interest" as any interest which is paid or accrued during the year on (i) acquisition indebtedness or (ii) home equity indebtedness.[7]

Prior to 1986, interest paid had consistently been held to be a deductible item whereas the payment of a tax penalty, e.g., pursuant to I.R.C. § 6672, was not deductible. *See* discussion at Section H.1, *supra.* However, interest paid by a taxpayer on federal income taxes for a prior year was held to be deductible in computing income tax as interest paid within the taxable year on the underlying indebtedness, although the amount paid as penalty on such tax was not deductible. *United States v. Jaffray,* 97 F.2d 488, 492–94 (8th Cir.1938). The IRS had determined that the taxpayer in *Jaffray* had negligently understated and underpaid his income taxes for the years 1917 to 1920. The taxpayer, however, had overpaid his tax liability from 1922 to 1925 inclusive. While the taxpayer wanted to deduct part of the "penalty" which had been assessed and stipulated to as interest, the IRS argued that the wording in the stipulation was for a "penalty", and therefore, was not deductible. The court held that a portion of the stipulated "penalty" was interest, which was deductible, and that the remainder was a negligence penalty, and, therefore, was not deductible. *Id.,* 97 F.2d at 494. *See also Scripps v. Commissioner,* 96 F.2d 492, 495 (6th Cir.1938); *Patton v. Commissioner,* 71 T.C. 389, 1978 WL 3200 (1978); *Conley v. Commissioner,* T.C.Memo 1977–406, 36 T.C.M. (CCH) 1644, 1977 WL 3591 (1977); *Smith v. Commissioner,* 34 T.C. 1100, 1960 WL 1281 (1968); *Meersman v. Commissioner,* T.C. Memo 1993–47, 65 T.C.M. (CCH), 1878, 1993 WL 27500 (1993);

*Penrose v. United States,* 18 F.Supp. 413, 415 (E.D.Pa.1937).

As one court explained:

Prior to the 1986 Tax Reform Act, Courts consistently held that a noncorporate taxpayer could deduct tax deficiency interest arising from business income when computing adjusted gross income.

\* \* \* \* \* \*

In *Commissioner v. Standing,* 259 F.2d 450 (4th Cir.1958), both the Tax Court and the Fourth Circuit rejected the IRS's position that regardless of the source of income interest on income tax deficiencies was nondeductible in calculating AGI. In *Standing,* the sole proprietor of two businesses incurred both interest and litigation expenses with respect to federal income tax deficiencies based exclusively on adjustments to his business income. The court held that the deficiency interest in question was fully deductible as an ordinary and necessary business expense in computing AGI. See also *Tanner v. Commissioner,* 45 T.C. 145, 1965 WL 1300 (1965), *aff'd,* 363 F.2d 36 (4th Cir.1966).

\* \* \* \* \* \*

[With the enactment] of the Tax Reform Act of 1986, it states: (h) Disallowance of deduction for personal interest (1) in general. In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter other than—(A) interest paid or accrued on indebtedness properly allocable to a trade or business ... I.R.C. § 163(h).

In 1987, the IRS issued temporary regulations implementing the provisions of the Code disallowing the deduction of personal

(B) any investment interest (within the meaning of subsection (d)),
(C) any interest which is taken into account under section 469 in computing income or loss from a passive activity of the taxpayer,
(D) any qualified residence interest (within the meaning of paragraph (3)), and
(E) any interest payable under section 6601 on any unpaid portion of the tax imposed by section 2001 for the period during which an extension of time for payment of such tax is in affect under section 6163 or 6166 or under section 6166A (as in effect before its repeal by the Economic Recovery Tax Act of 1981).

7. I.R.C. § 163(h)(3) provides as follows:
Qualified residence interest. For purposes of this subsection—
(A) in general. The term "qualified residence interest" means any interest which is paid or accrued during the taxable year on—
(i) acquisition indebtedness with respect to any qualified residence of the taxpayer or
(ii) home equity indebtedness with respect to any qualified residence of the taxpayer.
For purposes of the preceding sentence, the determination of whether any property is a qualified residence of the taxpayer shall be made as of the time the interest is accrued.

interest ... Temp.Treas.Reg. § 1.163–9T(b)(2)(1) (1987) disallows the deduction of interest paid on individual income taxes even when the source of income is a business or trade.

*Miller v. United States*, 841 F.Supp. 305, 307–308 (D.N.D.1993), *aff'd Miller v. U.S.*, 65 F.3d 687 (8th Cir.1995).

Thus, Temporary Treasury Regulation § 1.163–9T [8] presently provides that an individual's income tax liability, regardless of the nature of the income giving rise to the liability, is a personal obligation, and, consequently, interest owed by such individual because of a failure to pay his tax obligation on time necessarily is also a personal obligation. *Miller v. U.S.*, 65 F.3d 687, 691 (8th Cir. 1995). The Court in *Miller* held that Temp. Treas.Reg. § 1.163–9T(b)(2)(i)(A), that the interest paid on underpayments of income taxes is *per se* nondeductible personal interest is valid. *Id.* The taxpayers in *Miller* were assessed federal and state income tax deficiencies for the tax years 1982 and 1983 generated by adjustments to their reported farming income during those years. In 1988, the taxpayers paid interest on those deficiencies and deducted the interest payment from their 1988 income. The *Miller* court held that because Temp.Treas.Reg. § 1.163–9T(b)(2)(i)(A) is neither inconsistent with the language of the statute, nor at odds with the legislative history, the regulation represents a permissible construction of the statute; therefore, interest paid on the underpayment of income taxes was held to be *per se* nonde-

ductible personal interest. *Id.* The *Miller* court concluded that regardless of the nature of the income giving rise to the liability, any such interest is a personal obligation and consequently, interest owed by such individual because of a failure to pay his tax obligation on time necessarily is also a personal obligation. *Id.*

As the *Miller* court stated:

The standards applicable to determining the validity of Treasury regulations are well established. "Congress has delegated to the Commissioner, not to the courts, the task of prescribing all needful rules and regulations for the enforcement of the Internal Revenue Code." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967) (*citing* 26 U.S.C. § 7805(a)). The regulations issued by the Commissioner are valid and must be upheld "if they implement the Congressional mandate in some reasonable manner." *Rowan Cos., Inc. v. United States*, 452 U.S. 247, 252, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981) (Citation omitted). Thus, a reviewing court is not free to set aside a regulation simply because it would have implemented the statute in a different manner. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 11, 104 S.Ct. 2778, 2782 n. 11, 81 L.Ed.2d 694 (1984). Instead, "[t]he choice among reasonable interpretations is for the Commissioner, not the courts." *National Muffler Dealers Ass'n v. United*

---

8. 26 C.F.R. § 1.163–9T, Personal Interest (Temporary), provides in part as follows:

 (a) In general. No deduction under any provision of Chapter 1 of the Internal Revenue Code shall be allowed for personal interest paid or accrued during the taxable year by a taxpayer other than a corporation.

 (b) Personal interest—(1) Definition. For purposes of this section, personal interest is any interest expense other than—

 (i) Interest paid or accrued on indebtedness properly allocable (within the meaning of § 1.163–8T) to the conduct of trade or business (other than the trade or business of performing services as an employee),

 (ii) Any investment interest (within the meaning of section 163(d)(3)),

 (iii) Any interest that is taken into account under section 469 in computing income or loss from a passive activity of the taxpayer,

 (iv) Any qualified residence interest (within the meaning of section 163(h)(3) and § 1.163–10T), and

 (v) Any interest payable under section 6601 with respect to the unpaid portion of the tax imposed by section 2001 for the period during which an extension of time for payment of such tax is in effect under section 6163, 6166, or 6166A (as in effect before its repeal by the Economic Recovery Tax act of 1981).

 (2) Interest relating to taxes—(i) In general. Except as provided in paragraph (b)(2)(iii) of this section, *personal interest includes interest—*

 (A) *Paid on underpayments of individual Federal, State or local income taxes and on indebtedness used to pay such taxes* (within the meaning of § 1.168–8T) *regardless of the source of the income generating the tax liability;* (emphasis supplied).

*States,* 440 U.S. 472, 488, 99 S.Ct. 1304, 1312, 59 L.Ed.2d 519 (1979). *See Fulman v. United States,* 434 U.S. 528, 534–36, 98 S.Ct. 841, 845–46, 55 L.Ed.2d 1 (1978) (upholding regulation that had a "reasonable basis" in the statutory history, even though the taxpayer's challenge to its policy had "logical force").

\* \* \* \* \* \*

There is little legislative history available regarding the treatment of income tax deficiency interest under [I.R.C.] § 163(h)(2)(A), but what is available supports the conclusion that Temp.Treas.Reg. § 1.163–9T is a reasonable interpretation of legislative intent. The *Conference Report on the Tax Reform Act of 1986* states that "[p]ersonal interest also generally includes interest on tax deficiencies." H.R.Conf.Rep. No. 841, 99th Cong.2d Sess. II–154 (1986). Further, the *General Explanation of the Tax Reform Act of 1986,* authored by the staff of the Joint Committee on Taxation, provides that "[p]ersonal interest also includes interest on underpayments of individual Federal, State or local income taxes notwithstanding that all or a portion of the income may have arisen in a trade or business, because such taxes are not considered derived from the conduct of a trade or business." While we recognize that this latter document does not rise to the level of legislative history because it was prepared by Congressional staff after enactment of the statute, we nevertheless find that it is "highly indicative of what Congress did, in fact, intend," *Estate of Wallace v. Commissioner,* 965 F.2d 1038, 1050–51 n. 15 (11th Cir.1992). *See also McDonald v. Commissioner,* 764 F.2d 322, 336 n. 25 (5th Cir.1985) (*General Explanation of the Tax Reform Act of 1969* is "entitled to great respect"); *FPC v. Memphis Light, Gas & Water Div.,* 411 U.S. 458, 472 [93 S.Ct. 1723, 1731, 36 L.Ed.2d 426] (1973) (*General Explanation of the Tax Reform Act of 1969* is a "compelling contemporary indication" of the effect of a statutory provision).

We also note that subsequent legislative actions have not indicated any disagreement with the interpretation of I.R.C. § 163(h)(2)(A) embodied in the regulations. In 1988, Congress amended the definition of "personal interest" in I.R.C. § 163(h)(2)(A), but expressed no dissatisfaction with the rule adopted in the regulations that interest on income tax deficiencies constitutes personal interest per se. *See* Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, § 1005(c)(4), 1988 U.S.C.C.A.N. (102 Stat.) 3342, 3390. Congress' failure to change a challenged regulation when amending the relevant statutory provision "is an indication that Congress did not perceive the regulation to be unreasonable or inconsistent with Congressional intent." *Hefti v. Commissioner,* 983 F.2d 868, 872 (8th Cir.), *cert. denied,* 508 U.S. 913, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993).

The taxpayers argue that interest on income tax deficiencies arising from business activity has been historically deductible as a business expense under I.R.C. §§ 62(a)(1) and 162 and, because those provisions of the statute were unaltered with the Tax Reform Act of 1986, Congress did not intend to alter case law that had previously allowed the deductibility of such interest.

Even if we agreed that the taxpayer's argument had some logical force, our decision would remain unaltered. Our role here is not to determine whether other reasonable interpretations of the statute exist, but instead to consider whether the regulation at issue, that noncorporate income tax deficiency interest derived from whatever source is personal interest, is a permissible construction of the statute. Because Temp.Treas.Reg. § 1.163–9T(b)(2)(i)(A) is neither inconsistent with the language of the statute nor at odds with the legislative history and directly tracks the statement of the staff committee in the General Explanation, we conclude the regulation represents a permissible construction of the statute. The regulation adopts the reasonable rule that an individual's income tax liability, regardless of the nature of the income giving rise to the liability, is a personal obligation and that, consequently, interest owed by such individual because of a failure to pay his tax

obligation on time necessarily is also a personal obligation. Thus, contrary to the conclusion of the district court, the provision in Temp.Treas.Reg. § 1.163–9T(b)(2)(i)(A) that the interest paid on underpayments of income taxes is per se nondeductible personal interest is valid and, as such, dispositive of taxpayers' claimed interest deduction in this case.

*Miller,* 65 F.3d at 689–90. *See also, Tate & Lyle, Inc. v. Commissioner of Internal Revenue Service,* 87 F.3d 99 (3d Cir.1996), where the court held that if the court concludes that Congress has not directly addressed the precise question at issue, or that the statute is silent or ambiguous regarding this issue the court must make a determination of whether the agency's interpretation "is based on a permissible construction of the statute." *Id.,* 87 F.3d at 104 *(quoting Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782). Inherent in the powers of an administrative agency is the authority to formulate policies and to promulgate Rules to fill any gaps left, either implicitly or explicitly, by Congress. *Id.* Where Congress has expressly delegated to an agency the power to "elucidate a specific provision of the statute by regulation.... [s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to statute." *Id.* *(quoting Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782).

In contrast to the *Miller* decision, the United States Tax Court found that a business deduction for interest paid on Federal income taxes arising out of a deficiency in federal income tax, based on adjustments caused by accounting errors of the taxpayer's unincorporated business were properly allocable to a trade or business, and was an allowable deduction. *Redlark v. Commissioner,* 106 T.C. No. 2, Tax Ct.Rep. (CCH) 51,104, 1996 WL 10243 (U.S. Tax Ct.1996). The taxpayers claimed the interest was held to be properly allocable to business indebtedness, and therefore not personal interest under I.R.C. § 163(h)(2)(A). The court held that § 1.163–9T(b)(2)(i)(A) is invalid insofar as it applied under the circumstances involved. *Id.* Furthermore, the court held the amount of the interest so allocated by the taxpayers was deductible as interest on an "indebtedness properly allocable to a trade or business" within the meaning of I.R.C. § 163(h)(2)(A). *Id.* The tax court held that deficiency interest was deductible as a business expense in determining the amount of a net operating loss carryover. *Id.* This treatment has been accepted by the IRS insofar as the net operating loss provisions are concerned but not with respect to interest on deficiencies as a business expense under I.R.C. § 162 and I.R.C. § 62. *Id.* *See also* Rev.Rul. 70–40, 1970–1 C.B. 50. The court further found that the Secretary of the Treasury should not be entitled to use the authority conferred by I.R.C. § 7805(a) to construct a formula which excludes an entire category of interest expense in disregard of a business connection. The tax court concluded that such a result discriminates against the individual who operates his or her business as a sole proprietorship instead of in corporate form where the limitation on the deduction of "personal interest" would not apply. *Id.* The Court in *Redlark* stated:

> Nor can [Commissioners's] position be salvaged by the Joint Committee Staff Explanation. Such a document is not part of the legislative history although it is entitled to respect.... Where there is no corroboration in the actual legislative history, we shall not hesitate to disregard the General Explanation as far as congressional intent is concerned. *See Estate of Wallace v. Commissioner,* 965 F.2d 1038, 1050–1051 n. 15 (11th Cir.1992), *aff'd.* 95 T.C. 525, 1990 WL 175911 (1990); *Zinniel v. Commissioner,* 89 T.C. 357, 367, 1987 WL 43894 (1987), *aff'd.* 883 F.2d 1350 (7th Cir.1989). Given the clear thrust of the Conference Committee report, the General Explanation is without foundation and must fall by the wayside. To conclude otherwise would elevate it to a status and accord it a deference to which it is simply not entitled.

\* \* \* \* \* \*

In light of the foregoing, and with all due respect to the Court of Appeals for the Eighth Circuit, we hold that, as applied to the circumstances involved herein, section 1.163–9T(b)(2)(I)(A), constitutes an imper-

missible reading of the statute and is therefore unreasonable. *Id.*

■ The Court having carefully reviewed the conflicting decisions of the *Miller* court and the *Redlark* court, concludes that the result reached by the *Miller* court is the correct one, and that 26 C.F.R. § 1.163–9T(b)(2)(i)(A) is valid. The *Miller* court gave proper deference to the Commissioner's power to issue regulations implementing the I.R.C., and set out the proper standard and scope of judicial review of those regulations. The Court concludes that this regulation, which states that noncorporate interest paid on any underpayment of individual income taxes, regardless of the source of the income generating the tax liability is nondeductible "personal interest", is a permissible reading of § 163(h)(2)(A), and therefore is valid.

■ In applying 26 C.F.R. § 1.163–9T(b)(2)(i)(A) to the case at bar, the Court concludes that the Debtors could not have personally deducted any interest paid by them on their "100%", or "responsible person" tax penalties pursuant to § 6672, as this constitutes nondeductible personal interest, even though it arose out of the conduct of a trade or business by the Debtors. Although § 1.163–9T(b)(2)(i)(A) refers to personal interest as interest paid on underpayments of individual *income* taxes, and in the case at bar, the interest was paid by the Debtors' Estate on the Debtors' § 6672 responsible person penalty, § 1.163–9T(b)(2)(i) and states that personal interest "includes" interest paid on underpayments of individual income taxes. The word "includes" is not limiting. As noted by the Court in *Miller*, the Conference Report on the Tax Reform Act of 1986 states that "[p]ersonal interest also generally includes interest on tax deficiencies.", and the General explanation of the Tax Reform Act stated that interest paid in the underpayment of income taxes is personal interest notwithstanding all or a portion thereof may have arisen from a trade or business. 65 F.3d at 690. If interest paid on the underpayment of individual income taxes is a personal obligation and thus is not deductible as personal interest, it follows that even a stronger argument can be made that interest

paid on responsible person penalties is also not deductible as personal interest, pursuant to 26 C.F.R. § 1.163–9T(b)(2)(i)(A), even if the tax liability arises out of the conduct of the Debtors' trade or business as a responsible person under § 6672, because it is also a personal obligation. Because this interest was not deductible by the Debtors as personal interest it is also not deductible by the Debtors' estate pursuant to I.R.C. § 1398(e)(3).

3. *Whether the Interest paid to the IRS sought to be deducted by the Debtors' Estate as to its 1992 Income Tax Return is "Qualified Residential Interest".*

Under I.R.C. § 163(h)(2)(D) "qualified residential interest" (within the meaning of paragraph (3)), is deductible as this subsection specifically excludes "qualified residence interest" expense as nondeductible personal interest. Under I.R.C. § 163(h)(3), "qualified residence interest" is further defined. *See* Footnote 7, *infra*.

Section 163(j)(7) specifies that the Secretary of the Treasury shall prescribe regulations as may be appropriate to carry out the implementation of this subsection. Treasury Regulation 1.163–10T, Qualified Residence Interest (temporary), was issued to specifically address the issue of what constitutes qualified residence interest. In order for interest to be deductible as qualified residence interest, the interest on the debt must be secured by a qualified residence. *See* I.R.C. § 163(h)(3)(A)(ii), and 163(h)(3)(B)(ii). In the determination of what is a secured debt for the purposes of "qualified residence interest", IRS Regulation 1.163–10T(*o*) states as follows:

(*o*) SECURED DEBT—

(1) IN GENERAL. For purposes of this section, the term "secured debt" means a debt that is on the security of any instrument (such as a mortgage, deed of trust, or land contract)—

(i) That makes the interest of the debtor in the qualified residence specific security for the payment of the debt,

(ii) Under which, in the event of default, the residence could be subjected to the satisfaction of the debt with the same priority as a mortgage or deed of trust in the jurisdiction in which the property is situated, and

(iii) That is recorded, where permitted, or is otherwise perfected in accordance with applicable State law.

*A debt will not be considered to be secured by a qualified residence if it is secured solely by virtue of a lien upon the general assets of the taxpayer or by a security interest, such as a mechanic's lien or judgment lien, that attaches to the property without the consent of the debtor.* (emphasis supplied).

Interest expense on a tax deficiency may be deductible as "qualified residence interest" under I.R.C. § 163(h)(2)(D). *See Lawler v. Commissioner of Internal Revenue,* T.C. Memo—1995–26, 69 T.C.M. (CCH) 1699, 1995 WL 23387 (United States Tax Court 1995). The taxpayer in *Lawler* executed and delivered to the IRS a note for the remaining principal and interest pursuant to a Tax Settlement Agreement previously signed with the IRS. The note was secured by a deed of trust on the taxpayers home and farm. The deed of trust was properly recorded and perfected in accordance with the applicable state laws. The taxpayer deducted as "qualified residential interest" the interest paid on the note. The court held that the interest payment was deductible as "qualified residential interest" because the taxpayer had secured the note with his principal residence. *Id.*

The *Lawler* case is distinguishable from the case at bar, because the note and deed of trust in *Lawler* were voluntarily executed by the taxpayer in compliance with the settlement agreement. The deed of trust was properly perfected under the applicable state law. However, Treasury Reg. 1.163–10T(*o* ) specifically excludes as "qualified residential interest, interest paid on a debt, secured by a lien that attaches to the general assets of the taxpayer *without* the consent of the debtor. Thus, the interest that was paid to the IRS pursuant to the involuntary tax lien placed generally by the IRS on all of the Debtors' property, real and personal, including the Debtors' Residential Real Estate, would not, absent the Debtors' bankruptcy have been deductible by them on their personal income tax return as "qualified residence interest" pursuant to Regulation 1.163–10T(*o* ), as any such interest did not arise out of a security interest voluntarily granted by the Debtors. Because this interest was not deductible by the Debtors, it is also not deductible by the Debtors' estate pursuant to I.R.C. § 1398(e)(3), which states that the determination of whether or not any amount paid by the estate is deductible shall be made as if the amount were paid or incurred by the debtor, and as if the debtor were still engaged in the trades and businesses, and in the activities, the debtor was engaged in before the commencement of the case.

### Conclusion

Accordingly, the Court concludes as follows:

1. That the administrative tax interest assessed by the IRS versus the Debtors' estate by the IRS for the tax year 1990 was proper.

2. That the late filing and late payment administrative tax penalties assessed by the IRS versus the Debtors' estate for the tax year 1990 were proper.

3. That the Debtors were on a cash basis method of tax accounting prior to the filing of their petition, and thus, the Debtors' estate was also at all relevant times on a cash basis method of tax accounting.

4. That because the Debtors' estate was on a cash basis method of accounting, it may not deduct on its Amended 1990 income tax return, the interest paid by the Trustee to the IRS on its tax lien in 1992.

5. That because the § 503(b) administrative claims for Trustee commissions, and the fees for the Trustee's attorneys have never been allowed by the Court or paid to date by the trustee, and the Debtors' estate is on a cash basis method of accounting, any such administrative expenses that may have accrued by the Debtors' estate to date are not deductible by the Debtors' estate on either its Amended 1990 in-

come tax return, or on its 1992 income tax return pursuant to § 1398(h)(1)

6. That the payment by the Debtors' estate of interest to the IRS based upon its tax lien versus the Debtors' residence arising out of the Debtors' § 6672 Responsible Person Penalty is not deductible because that interest is personal interest, pursuant to 26 C.F.R. § 1.163–9T(b)(2)(i)(A), and is not "qualified residence interest" as it does not arise out of a "secured debt" as defined by 26 C.F.R. § 1.163–104(o)(1).

The IRS shall settle a proposed Order on the Court, with its calculations and computations as to the tax liabilities of the Debtors' estate for the tax years 1990 and 1992, and serve a copy on counsel for the Trustee, and the Debtors.

**SO ORDERED.**